**Lois M. BUCKLEY, Plaintiff,**

v.

**CITY OF OMAHA, NEBRASKA, a municipal corporation, et al., Defendants.**

Civ. No. 77–0–91.

United States District Court,
D. Nebraska.

Nov. 9, 1979.

Randall W. Owens, Omaha, Neb., for plaintiff.

Kent N. Whinnery, Asst. City Atty., Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

Lois Buckley was formerly a secretary within the Human Relations Department of the City of Omaha before her employment was terminated as of September 30, 1976. Alleging that she was discriminated against by the city and two municipal employees on account of the color of her skin, Buckley filed this lawsuit in federal district court to vindicate her perceived rights under 42 U.S. C.A. §§ 1981, 1983 and 2000e *et seq.* (1974). In particular, Buckley alleges that she, a white person, was fired from her job and replaced by a black who was less qualified. The plaintiff further maintains that she was discriminated against in job promotions because of her race, and that she was harassed by her black supervisor. Buckley seeks redress in this Court for loss of wages, mental distress and emotional anguish, all of which allegedly emanate from the discrimination engaged in by the defendants.

A nonjury trial upon the merits has been held, and final written arguments have been submitted to the Court. As resolution of this case hinges more upon a determination of factual rather than legal issues, the Court will review the evidentiary record prior to drawing any conclusions of law.

Lois Buckley originally started working for Omaha's Human Relations Department during the fall of 1967. This temporary position lasted until approximately May of 1968. After a brief period of employment with the city's legal department, the plaintiff was rehired by the Human Relations Department as a seasonal employee in August of 1969. Buckley eventually took a secretarial proficiency test, and was promoted from a Clerk-Typist I to a Clerk-Typist II. She was subsequently promoted to the level of a Secretary I under Ozzie Wilson, a former head of the Department. In the fall of 1972, Buckley rose to the position of a Secretary II during the tenure of Roger Sayers as Human Relations Director. She received no further advancements in position prior to her termination.

In November of 1973, August B. Hogan, a black, was appointed the new director of the Human Relations Board by the mayor. Approximately twenty-five months later, the Personnel Department of the City of Omaha created the position of Executive Secretary. This new classification was limited to those secretaries who were immediately responsible to the director of any one of the city's nine departments, and displaced Secretary II as the highest secretarial class obtainable within a particular municipal department. An Executive Secretary's compensation was reflective of that

position's greater status and responsibility relative to a Secretary II and other lower secretarial and clerical classifications.

According to Gary Troutman, the compensation manager for Omaha's Personnel Department, all appointments to the position of Executive Secretary were to be finalized by January 1, 1976. In order to determine which of the departmental secretaries were performing duties of sufficient responsibility to be eligible for this appointment, Troutman initiated a position analysis for each department. In a memorandum to Hogan, Troutman suggested that the classification of Lois Buckley as a Secretary II "no longer adequately describes the duties being performed in this position and it is hereby reallocated to the classification of Executive Secretary." The compensation manager suggested that Buckley "participate in a non-competitive promotional examination to qualify for the new classification . . ."

Larry Wewel, the Personnel Director for the City of Omaha at the time of trial, stated that the job study performed by the compensation division was only the first step in the promotional process. Even if the analysis showed that a certain individual was eligible to be installed as an Executive Secretary, the particular department head had to recommend the promotion before the positional reallocation could be effectuated. The necessary recommendation from Hogan never materialized, and Buckley did not take the promotional test. Wewel testified that this action by Hogan was permissible under the policies and ordinances of the city, as each department head had the discretion to determine whether the position of Executive Secretary should be created within his office. According to Wewel, it was entirely possible that a Secretary II could be the personal secretary to a department director.

The refusal of Hogan to act favorably with regard to his secretary's advancement prompted the plaintiff to retain counsel and appear before the Personnel Board. The Board concluded that it had no power to compel Hogan to give Buckley the required

endorsement and declined to exercise jurisdiction. According to the testimony of Hogan, a meeting was subsequently held in the city's legal department. The entire situation was discussed by Wewel, Hogan, Buckley, and two others. It was decided that Buckley should be given a sixty day trial period during which she was to perform various supervisory duties as well as the work expected of a Secretary II. Hogan agreed to evaluate her proficiency at the end of this time.

The record reflects that a number of clerical employees within the Human Relations Department were antagonistic toward each other during the time that the plaintiff was given the responsibility of supervising their work and behavior. Buckley's efforts at cutting down on the "backstabbing" were not particularly successful. According to Hogan, Buckley was not competent in supervising those employees whose behavior she was responsible for. The situation deteriorated, and one black clerical worker had to be fired. Convinced that Buckley was neglecting her supervisory responsibilities, Hogan relieved her from this facet of her working duties in early March of 1976. Hogan, who was concerned with the threat of a discrimination lawsuit against a civic department that was created to rectify injustices of this sort within the community, testified that he thought it best to assign Buckley to the Compliance Division of the Human Relations Department as secretary for Jim Herbert, a white man. In this manner, Hogan thought that he could ascertain whether he was subconsciously biased in his handling of the Buckley situation. Herbert confirmed that the transfer of the plaintiff to his department was because of Buckley's allegations of racial prejudice, but he was never told by Hogan that the shift was allegedly motivated by a desire to ascertain whether bias in fact did exist within the department.

To effectuate his desire to transfer Buckley to the Compliance Division, Hogan, in a memorandum dated March 17, 1976, informed the plaintiff of his plan. Ruth Dorsey, a black woman and a Clerk-Typist II,

was assigned the task of orienting the plaintiff in her new job, as well as taking over Buckley's former position as Hogan's secretary. The following day, Buckley refused to accept Dorsey's offer of orientation. Testimony received at trial also suggested that the plaintiff had stopped answering the director's phone during this time period. Hogan's subsequent conversation with her did not resolve the impasse, and Buckley was suspended without pay on March 18, 1976, pending a finalization of her dismissal on April 2, 1976. Buckley appealed Hogan's actions to the Personnel Board. Subsequent to a hearing on May 6, 1976, the Board filed a decision finding Buckley guilty of insubordination for failure to follow her supervisor's direct orders. Despite this finding, the Personnel Board modified the suspension and dismissal to a suspension only.

Lois Buckley returned to the Human Relations Department on May 7, 1976, only to find that a black woman, Nadine McWilliams, was now Hogan's personal secretary. McWilliams was a Secretary I during this time period. The plaintiff was directed to fill in for Janet Spracher, a white employee on leave, at the receptionist's desk. Buckley was subsequently assigned to the department library, where she worked at a table rather than at a desk. Although she remained a Secretary II, at no time subsequent to her reinstatement was Buckley called upon to perform any of her former duties.

On May 13, 1976, Nadine McWilliams took maternity leave from her job. Rather than using the plaintiff to fill in as secretary to the director, Hogan had Ruth Dorsey step in for the duration of McWilliams' absence. Upon McWilliams' return in early September, 1976, the Human Relations Department faced the prospect of a long-term strain on its budget due to the presence of one too many employees. In an attempt to alleviate the fiscal stress, Hogan caused Lois Buckley to be laid off as of September 30, 1976.

After thoroughly reviewing the testimony of all of the witnesses and the exhibits introduced at trial, the Court concludes that the named defendants did not discriminate against the plaintiff on account of her race.

The record is not devoid of support for the contention that racial discrimination took place. Buckley never had any discipline problems or unfavorable reviews prior to March of 1976. Moreover, Hogan stated that he never considered laying off anyone but the plaintiff after McWilliams' return to work. Hogan further testified that he did not take prior experience into account in assigning job duties upon Buckley's reinstatement pursuant to the ruling of the Personnel Board.

Despite these difficulties, the fact remains that the plaintiff has failed to prove, by a preponderance of the evidence, that the sequence of events that culminated in her termination as a municipal employee was attributable to prejudice or discrimination. This conclusion is supported by the testimony of Larry Wewel. Wewel stated that it was not unusual for a Secretary II to act as the personal secretary to a departmental head. Wewel further testified that the creation of the position of Executive Secretary was permissible but not mandatory. Gary Troutman, the City's compensation manager during 1976, corroborated Wewel's statements when he stated that three municipal departments are presently without an Executive Secretary. In the face of this evidence, the Court is unwilling to conclude that Hogan's refusal to create such a position within the Human Relations Department was an abuse of discretion motivated by racial animosity.

Evidence adduced at trial demonstrated that Gary Troutman did not personally evaluate the quality of the plaintiff's work prior to his recommendation that Lois Buckley take a promotional examination to qualify for the position of Executive Secretary. In the absence of such a first-hand inspection of her competency by the compensation manager, the Court feels that Hogan's evaluation of the plaintiff's aptitude for supervision of other employees is more credible.

Although not binding upon this Court, the Personnel Board's determination that the plaintiff was guilty of insubordination for failure to observe the direct order of a department head tends to support the conclusion that the suspension was not attributable to racial prejudice.

The fact that Hogan put in a requisition for a new secretary to the director after Buckley's suspension pending termination in March of 1976 does not indicate an impermissible motivation despite the pendency of the plaintiff's appeal. Larry Wewel's uncontroverted testimony demonstrated that appeals from disciplinary actions are common. Rather than operating without a full staff during the appeal of the aggrieved employee, many departments attempt to obtain replacement personnel as quickly as possible. Wewel stated that a department head could prepare a requisition for a replacement the day following the layoff without offending normal personnel procedures.

A lack of racial discrimination in the Human Relations Department is further demonstrated by evidence concerning its operation subsequent to Buckley's first suspension. It is uncontroverted that Hogan had no power to independently choose the plaintiff's successor. The Personnel Department had the duty to submit a list of three employees to Hogan in response to his request for a replacement. The two individuals who eventually interviewed for the opening were both black. Hogan had no discretion to hire a white under the standard replacement procedures followed by the Personnel Department. The fact that Nadine McWilliams initiated the transfer process by independently filing an application further shows the lack of control that Hogan had in the hiring procedures. It is also significant that neither McWilliams, Ruth Dorsey, nor any other employee of the Human Relations Department have been promoted to the level of Secretary II, Buckley's classification at the time of her termination, subsequent to the layoff of the plaintiff.

Buckley's permanent termination in September of 1976 was not racially motivated.

Although the plaintiff never refused to do any of the work assigned to her subsequent to her reinstatement, Jim Herbert, her supervisor, stated that her attitude was less than ideal. Buckley's layoff was not atypical during this time period. The evidence establishes that budgeting constraints necessitated similar actions in other municipal departments. Hogan's efforts to increase the department's allotment of funds proved unsuccessful, and the plaintiff suffered as a result. Hogan's choice of Buckley as the individual who had to be terminated was not irrational, given her large salary, small workload, and recent problems with her supervisors.

A lack of racial prejudice is further suggested by the efforts of Larry Wewel to find a job for Buckley in other municipal departments at the time of her first suspension and immediately prior to her final termination. Evidence pertaining to the pattern of hiring within the Human Relations Department as a whole shows no disproportionate emphasis upon the hiring of minorities. The present secretary to the director is a white woman. All of these factors point to the conclusion that the defendants' actions were free of the taint of racial prejudice.

The Court is not unsympathetic to the plight of the plaintiff. The occurrence of the unfortunate chain of events that led to her termination has caused alienation and disharmony. However, the Court is capable of giving relief only upon a showing of a violation of her civil rights. Under the facts in this case, the Court holds, as a finding of fact and a conclusion of law, that the plaintiff has not demonstrated a redressable grievance.

An order shall be issued contemporaneously with this Memorandum Opinion.